J. Harold Mahon, Appellant, *v.* Patrick T. Norton, Thomas M. Dullard and Thomas Smith, County Commissioners of Luzerne County.

*County commissioners—Luzerne county—Wilkes-Barre—Courthouse—Public square.*

The county commissioners of Luzerne county have a right to erect and maintain on the public square in the city of Wilkes-Barre, upon the location of the present courthouse, a new and enlarged courthouse of sufficient size to accommodate the business of the county.

Argued April 16, 1896. Appeal, No. 314, Jan. T., 1896, by plaintiff, from decree of C. P. Luzerne County, March Term, 1896, No. 4, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ. Affirmed.

Bill in equity, by a citizen and taxpayer of Luzerne county in behalf of himself and such other taxpayers as may join to restrain the county commissioners from using or occupying any part of the public square in the city of Wilkes-Barre for the

erection of a courthouse, and particularly any part so occupied at the present time.

All the facts necessary to an understanding of the case appear by the opinion of SEARLE, P. J., of the 34th judicial district, specially presiding, which was as follows:

The bill filed prays an injunction may be issued to enjoin the county commissioners from using or occupying any part of the public square in the city of Wilkes-Barre for the purpose of erecting thereon a courthouse and particularly from using any part of said square not so occupied at the present time.

The respondents have filed an answer which admits all the facts set forth in the bill, but denies the conclusions of law attempted to be drawn, and avers a right to use and occupy said public square for a new courthouse, also averring that the increased business of the county requires increased accommodation by a building which will occupy double or more than double the surface of the public square now taken by the present building.

The case was heard upon the bill and answer.

The averments of fact in bill and answer are all admitted to be true, and there is no necessity of incorporating these facts in this opinion.

The learned solicitor for the complainant claimed:

1. That the act of the commissioners appointed to put in execution the act of 1799 in issuing a certificate to a committee of Wilkes-Barre township for a plot of ground designated " Centre Square " was without authority, as they only had authority to issue certificates to actual settlers, and this was issued to a township committee for the purpose of a public square.

2. That the appropriation of this square for the purpose of erecting the first courthouse in 1791, and the second in 1804, was without authority of law.

3. That the only authority of law given to appropriate any portion of this square for a courthouse was given by act of May 5, 1855, P. L. 443, and its supplements April 2, 1856, P. L. 225.

4. That the power of appropriation was executed and exhausted by the erection of the present courthouse, and the county commissioners have now no authority to appropriate any additional portion of said square in erecting a new courthouse.

The learned solicitor for the respondents claims that the county commissioners have the right to build such a courthouse as they intend upon said square because:

1. The county has exercised such a right for upwards of one hundred years, and it is now too late for any one to question it.

2. The right was acquired by the commissioners appointed to secure a place for a courthouse in 1791. That open, notorious and hostile possession for so long a period presumes a grant.

3. The legislature by act of May 5, 1855, expressly author-ized the building of a courthouse on the public square.

4. The borough of Wilkes-Barre, now the city, has a vested right to have the building in the center of the square, having contributed $20,000, to wit: for the present building, on that condition under the act of May, 1855, P. L. 443.

5. The square was originally laid out by private owners, The Connecticut Susquehanna Company, and the land contained in the square dedicated to public use. This was a dedication for such appropriate public use as would under usage and custom be deemed to have been fairly in contemplation at the time of so laying out and selling lots in the plan, as courthouses, markets, churches and pleasure grounds.

The claimants of this land under the Connecticut title laid it out for public use under the designation of " Centre Square " in 1773. This was a dedication for public use as far as the title or interests of the settlers so doing was concerned, and would have as much binding force to convey interest as a deed to a third party.

In Shepherd v. Com., 1 S. & R. 1, it was held, that the certificate of the commissioners appointed under the act of 1799 was conclusive upon the commonwealth as to the assignment of the property and settlement previous to the decree of Trenton.

In Barney v. Sutton, 2 Watts, 31, Judge SCOTT held that the conveyance by a Connecticut settler of his claim, interest or right, made prior to the passage of the act of 1799, would pass such title so that the issuing of a certificate to the grantor subsequent to the passage of the act of 1799 inured to the benefit of the grantee.

In Griffin v. Fellows et al., 81* Pa. 114, Judge ELWELL held that the title to certain lands vested in the public committee of the township of Providence, by virtue of a certificate dated

in 1807, granted by the commissioners appointed under the act of 1799 and subsequent patent. That the certificate granted to the public committee was of itself conclusive evidence that they, or those from whom they derived the title, were actual settlers prior to the decree of Trenton in 1782. Also that a lease executed by said public committee of the township of Providence to Joseph Fellows of the land in 1796 (prior to the act of 1799) was valid. This case was affirmed by the Supreme Court upon the opinion of Judge ELWELL.

The application of the principles held by these cases to the facts as admitted in the bill establish legal title in this square in the borough of Wilkes-Barre to the use of the public the same as other public squares of the commonwealth, excepting as such use is modified by the acts of May 5, 1855, April 2, 1856, and March 27, 1865.

In Rung v. Shoneberger, 2 Watts, 23, Justice ROGERS in defining the uses of public squares said : " In this state there are few ancient towns in which squares such as this do not form part of the plan. They are generally located at the intersection of the streets, and are intended as sites for the erection of buildings for the use of the public ; such as courthouses, market houses, schoolhouses and churches. Sometimes they are designed for ornaments, and at others they are intended for the promotion of the health of the inhabitants by admitting a free circulation of air. The squares as well as the streets, and for the same reason, are placed under the superintendence of the local authorities, who have full power to regulate them, so as to more effectually answer the purpose to which they have been dedicated."

In Commonwealth v. Bowman, 3 Pa. 202, Chief Justice GIBSON in defining the right of the county to the use of the public square laid down the rule as follows:

" To allow the county reasonable accommodation for its courthouse and offices in the great square of the county town is one of the usages of our state which has acquired the consistence of law. Such is the foundation of the county's right and the extent of it; for it certainly has no inherent right to property which has been dedicated not to its use, but to the use of all the citizens of the commonwealth. County commissioners have no greater right than an individual has to disturb the citizen in

the enjoyment of a municipal franchise, at least beyond the bounds of absolute necessity. . . . The public square is as much a highway as if it were a street," etc.

In Commonwealth v. Rush et al., 14 Pa. 186, the use of the public square as defined by Justice ROGERS in Rung v. Shoneberger and by Chief Justice GIBSON in Commonwealth v. Bowman are approved—and all of these cases are cited approvingly in Commonwealth v. Beaver Borough, 171 Pa. 542.

It is contended by the learned solicitor for complainant that the right to erect a courthouse upon the public square was not the issue in any of those cases, and the opinions expressed by the justices on that subject are but dicta and not binding. While the right of the county to erect a courthouse on a public square was not the issue in either of those cases, the real issue called for an opinion as to the rights of the county, and such opinion having been rendered, is binding until modified by the action of the Supreme Court.

The rights of the county as established by custom and usage in this square have been modified by legislative enactment. The first act was passed May 5, 1855. Sec. 3 expressly empowers the town council of the borough of Wilkes-Barre to appropriate $20,000 towards the cost of erecting a new courthouse in said borough, " provided that said courthouse shall be erected in the centre of the square of said borough, and also provided that councils and commissioners of said county may at any time cause any buildings now on the square to be taken and removed, and after the erection of the buildings they shall cause all others to be removed."

The language of this act would undoubtedly confer the right to build a courthouse upon this square even if no such right had previously existed, and restrain its location to the center of the same. The second proviso recognizes as a fact that there are other buildings upon said square, and presumably by right, as this proviso requires the borough council and county commissioners to remove them after the erection of the (county) buildings.

These two provisos, construed with the right of use by custom and usage of the public square as defined by the decisions, restrict the location of the county building to the center of the square, and abrogate the right of erection of other buildings upon it.

The supplement of April 2, 1856, enlarges the power of the county commissioners as to location of the new courthouse to " in or near the centre of the public square of said borough as they may consider proper and desirable."

The act of March 27, 1865, P. L. 800, removes the power of control of this square from the borough and places it in the county commissioners by enacting that the said county commissioners are hereby authorized and empowered to take charge of the public square in the borough of Wilkes-Barre, the same on which the courthouse of said county now stands, build a fence around the same with suitable walks, and set it with trees and shrubbery, and the expense thereof to be paid by them by orders drawn on the county treasury.

The main question raised by the bill and answer is the right of the county commissioners to enlarge the area of the present courthouse.

The only authority upon the question is City of Harrisburg's Appeal, 10 Atl. Rep. 787; s. c., 9 Cent. Rep. 345. In that case the city proposed to enlarge the market house on market square. Judge SIMONTON in an opinion approved by the Supreme Court held that the erection of permanent structures for any purpose, with one exception, upon a public street or square has uniformly been held illegal. (This exception was the erection of a courthouse as held by GIBSON, C. J., in Commonwealth v. Bowman, 3 Pa. 202,) and continued an injunction restraining the enlargement of the markets which was the only decree asked for.

N. Holmes & Sons v. the City of Pittsburg, 35 Pitts. L. J. 491, was a bill filed to restrain defendants from erecting hucksters' stands or market stands between the market houses in the city of Pittsburg. STOWE, P. J., in an opinion granting an injunction, held that the public square having been used for a market for a period approximating one hundred years, "the law will now conclusively presume a grant from the original proprietors for such use. This view of the case, however, necessarily restricts the use of the ground for other than strictly public purposes to so much as is shown to have been thus continuously used for the more limited purposes of a merely local character, such as for courthouses and market buildings."

These cases are not in entire accord. Judge SIMONTON holding that the market square was a public highway and no public

buildings could be erected upon a public street or square of a permanent nature with the exception of a courthouse, and Judge Stowe holding that the long continued use for market purposes presumed a grant from the original proprietors for that purpose, but restricting the use for market purposes to the area continuously used for such purpose.

Both of these cases were where the right of use of the square in derogation of the rights of the public vested entirely in long continued user. In the case at bar the right rests not only on the usage declared by Gibson, C. J., to have acquired the consistence of law, but also upon an express legislative enactment.

The grant of a power by act of assembly should be construed in connection with the existing conditions, and purposes to be accomplished, and the intention to make it commensurate with such purposes. The periodical enlargement of courthouses to meet the ever increasing business necessities is inevitable, and one of the principal factors to be taken into consideration in locating them.

A grant of right to erect a courthouse upon a public square which did not include the right of enlargement to meet the absolute requirements of public business would practically be for a temporary occupancy of the ground, and county commissioners would not be justified in erecting a courthouse when there was no power of expansion.

One of the conditions to be taken into consideration in construing these acts is the right of the county upon this square at the time of their passage, which was defined by Chief Justice Gibson in Commonwealth v. Bowman to be "to allow the county reasonable accommodations for its courthouse and offices." This construction of power would imply a right to enlarge the structures to meet the reasonable needs of the county.

There is nothing in any of these acts which in any way restricts the right of the county to appropriate land sufficient for the reasonable accommodation for the courthouse and offices. The only restriction placed upon the county is as to location in the square.

The removal of all buildings from the square except the courthouse and the transfer of its custody from the borough to the county commissioners also indicate that the square in future was to be used primarily for a courthouse.

This bill sets forth a continuous occupation of this square for a period of one hundred and five years by the county with a courthouse, an erection of three different structures, the last two, each, an enlargement of the preceding one; the acts of assembly which not only acknowledge and validate such user, but also provide for its continuation, and which transfer the custody of the square from the municipality to the county.

After a careful consideration of all the circumstances and conditions surrounding the dedication of this square and the maintenance of a courthouse upon it, I am constrained to the opinion that the county commissioners have the right to erect upon this square, upon the location of the present courthouse, a new one sufficient in size to accommodate the business of the county.

March 18, 1896. This case came on to be heard, and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz: That the bill be dismissed and the cost be paid by complainant.

The court dismissed the bill.

*Error assigned* was decree dismissing bill.

*Alexander Farnham, Mary L. Trescott* with him, for appellant.—When property is dedicated or transferred to public use, the use is indefinite according to circumstances; when a close population surrounds the property it may be used for recreation and ornament: Com. v. Alburger, 1 Whart. 469.

A county has no inherent right to appropriate the exclusive use of property not dedicated expressly to it, but dedicated to the citizens or public generally: Princeville v. Auten, 77 Ill. 325.

*H. W. Palmer, Joseph Moore* with him, for appellees.

PER CURIAM, April 27, 1896:

All that is necessary to be said in relation to the questions involved in this contention will be found in the clear and convincing opinion of the learned president of 34th judicial district who specially presided at the hearing. We have no doubt as to the correctness of his general conclusion recited in the first specification of error, the substance of which is, that the county

commissioners have a right to erect and maintain on the public square in the city of Wilkes-Barre, upon the location of the present courthouse, a new and enlarged courthouse of sufficient size to accommodate the business of the county. For aught that appears in the case, that legal conclusion is controlling, and the refusal of the injunction and dismissal of the bill necessarily result therefrom.

The decree is affirmed on the opinion of the learned trial judge, and the appeal is dismissed at plaintiff's costs.