## Gumpert, Appellant, *v.* Hay.

*Municipalities—Site of courthouse—Change of location.*

The city of Wilkes-Barre has the right to lease to the county of Luzerne for the term of 999 years, a portion of the river common in said city, over which the city has dominion, for the purpose of the site of a courthouse, and to receive in exchange for the same the Centre Square in the said city upon which the present courthouse stands.    Such a transaction is not a purchase of land by the county for courthouse purposes, and no previous consent of the grand jury to the mere change of location is necessary.

Argued April 15, 1902.    Appeal, No. 360, Jan. T., 1901, by plaintiff, from decree of C. P. Luzerne Co., Dec. T., 1900, No. 6, dismissing bill in equity in case of E. Gumpert et al. v. A. D. Hay, John M. Jones and P. J. Finn, County Commissioners of Luzerne County and the City of Wilkes-Barre. Before McCOLLUM, C. J., MITCHELL, DEAN, BROWN and MESTREZAT, JJ.    Affirmed.

Bill in equity for an injunction.

ENDLICH, J., specially presiding, found the facts to be as follows:

1. The borough of Wilkes-Barre was incorporated by an act approved March 17, 1806, P. L. 529, its territory including what had formerly been " the town plot of Wilkes-Barre and its vicinity," of which the first survey was made in 1770 and another in 1773, showing a division of lots and an open space along the Susquehanna, and being the earliest authentic evidence of an intention to leave an open space in front of the town and along the river for public use.

2. On January 2, 1804, commissioners appointed under the compensation act, April 4, 1799, and its supplements of

March 15, 1800, and April 6, 1802, made and returned a survey and issued a certificate to the township committee for two tracts of land in the township of Wilkes-Barre "one thereof being a square in the town plot thereof and called the Centre Square, and the other being the public common on the river bank," and the latter embracing the entire river front from North street to South street.

3. By section 3, Act of April 9, 1807, P. L. 195, that portion of the tract along the river front which lies between South and Union streets, a part of the entire tract described as "the public common" in the survey and certificate of January 2, 1804, is "granted and set apart as a public common, and to remain as such forever," and from that time down to the present has been so used and enjoyed by the public.

4. By section 6, Act of March 28, 1846, P. L. 196, it was enacted that the tract along the river front extending from Union to North street—also included in the entire tract mentioned as "the public common" in the survey, etc., of January 2, 1804— "be and, the same is hereby granted and set apart as a public common, and to be under the control and jurisdiction of the town council of the borough of Wilkes-Barre;" this portion of the tract embracing the land in question in this case.

5. Section 7, Act of May 3, 1852, P. L. 537, enacted "that it shall be lawful for the said town council of said borough to rent, for the best price they can obtain for the same, the public common between Union and North streets," and again, Act of May 5, 1855, P. L. 443, authorized the borough to lease a portion of the tract to the Wilkes-Barre Gas Company, for stock of which it was permitted to subscribe.

6. After the completion of the North Branch Canal, and about 1840, a large portion of the ground embraced by the so-called common extending from Union to North street was excavated and for years thereafter used as a canal basin for the storage of boats through the winter months and of derelicts; another portion of it was, in 1865, leased by the borough to J. E. Patterson & Company for the erection of a sawmill, the manufacture of building materials, and the storage of lumber, and continued to be so occupied until near the close of 1871; whereupon it became a waste place, used in some measure as a landing place and largely as a dump for garbage, and to a

limited extent (as it had previously been) as a play ground, and occasionally as a place for the exhibition of circuses, military trainings, celebrations, and the like. About a decade ago it was filled up and graded, and some trees were set out upon it. At no time in the past has it been used and enjoyed by the general public as a place of resort or recreation, or treated as forming an homogenous part or continuation of the common as laid out and maintained between South and Union streets, from which it is divided by several railway tracks.

7. The " Centre Square " spoken of in the survey, etc., of January 2, 1804, has for many years been and still is the site of the courthouse of Luzerne county, express legislative authority for its occupation for that purpose being contained in Act of May 5, 1855, P. L. 443, and its supplements.

8. By articles of agreement of February 8, 1869, between the trustees and the proprietors of the borough and township of Wilkes-Barre, and the burgess and town council of said borough, " all the public lots lying within the corporate limits of the borough of Wilkes-Barre for which certificates were given by the commissioners under the compensation act to a committee of the certified township of Wilkes-Barre . . . . and including . . . . the river common . . . . the whole width or front of said borough on the river," were transferred to the borough, and on January 10, 1870, a patent was issued to it for the tracts covered by the survey, etc., of January 2, 1804.

9. The borough of Wilkes-Barre, together with certain portions of the township of Wilkes-Barre, was incorporated as the city of Wilkes-Barre by Act of May 4, 1871, P. L. 539, the property of the former borough being thereby vested in the newly created city.

10. A portion of the plot here in question was, under legislative authority, occupied about 1837 by the North Branch Canal, and sold under Act of April 21, 1858, P. L. 414, to the Sunbury & Erie Railway Company. By deed of May 25, 1858, the Sunbury & Erie Railway Company conveyed all its rights in the works, with the appurtenances, to the North Branch Canal Company, which, by Act of March 20, 1865, P. L. 427, was changed to the Pennsylvania and New York Canal and Railroad Company, and authorized to construct a railway along either bank of the canal. In pursuance of ordinances of the

city of Wilkes-Barre, approved November 5, 1885, and November 23, 1887, a settlement and exchange of ground were effected between said railway company and said city, which restored to the latter the control over a sufficient portion of the tract to make up all of the territory here in question; which exchange, though not evidenced by formal transfers of record, was in fact carried out and executed by the parties to the settlement.

11. Moved by the recommendations of several successive grand juries and an universally conceded necessity for a new and larger courthouse, the county commissioners, on September 23, 1898, determined to build upon the location of the present courthouse on the "Public Square," and on January 13, 1899, invited competitive designs "for the proposed new courthouse upon Public Square, in the city of Wilkes-Barre." At the close of the period limited for the competition, the plan prepared by F. J. Osterling was adopted by a majority of the board of commissioners. Subsequently, this plan was submitted to the judges of this court, and approved by them. Whilst it was understood that the Osterling plan contemplated an erection upon the site of the present courthouse, neither the submission to the judges nor their approval making any point of the matter of location, that question was neither directly or inferentially before the court at that time.

12. On September 24, 1900, the county commissioners reported to this court that they had agreed to erect the new courthouse upon the river common, the site now in question, and asked the approval of the same by the court; whereupon two of the three judges gave their approval thereto. This was followed, on October 11, 1900, by another communication from the commissioners, representing that the city of Wilkes-Barre had refused to grant the county the right to build upon the common, and that the site of the present courthouse had been agreed upon as the location for the new one theretofore authorized, and submitting that location to the judges for their approval; whereupon, on October, 27, 1900, a majority of the judges approved the same, the then president judge declining to do so.

13. On June 16, 1898, the following resolution, passed on

June 14, 1898, by the city council of Wilkes-Barre, was approved by the mayor:

" Resolved : That the city lease to the county commissioners for a term of nine hundred and ninety-nine (999) years, at an annual rental of one dollar, the portion of the river common above the railroads for the purpose of erecting a county courthouse thereon.

" Provided, That the said commissioners will set over to the city for the same period the public square property now used by them for courthouse purposes, and will remove the building from said premises."

No further action was taken upon this proposal and it seems to have been dropped.

14. On November 23, 1900, the following ordinance previously duly passed by the select and common councils of the city of Wilkes-Barre, was approved by the mayor:

" An ordinance authorizing the county of Luzerne to occupy that portion of the river common lying between North street, North River street and the right of way of the Pennsylvania and New York Canal and Railroad Company, for the purpose of erecting and maintaining a county courthouse thereon.

" Section 1. Be it ordained by the select and common councils of the city of Wilkes-Barre, and it is hereby ordained by the authority of the same : That the county of Luzerne be and is hereby authorized and permitted to erect, construct and maintain a county courthouse on that portion of the public common north of Union street, which is bounded by North street, North River street and the right of way of the Pennsylvania and New York Canal and Railroad Company ; and the same to alter, repair and enlarge whenever in the judgment of the authorities thereof the same may be necessary.

" Section 2. That the county of Luzerne shall have absolute dominion and control over said lot of land so long as the same is used for courthouse purposes.

" Section 3. Said permission is granted with the distinct understanding and restriction that nothing herein contained shall be construed to be a grant of more than the surface and right of occupancy of the same for the purpose aforesaid ; and that the city reserves unto herself the right and privilege at any and all times to mine and remove the coal or other minerals under-

lying the plot herein granted without any liability in any event for injury to the surface of said land or any buildings erected thereon by reason of said mining operations.

"Section 4. The privilege herein granted is upon the fol-, lowing considerations, to wit: That upon the completion of the county courthouse on the river common plot aforesaid, the county of Luzerne shall remove the courthouse from Public Square and fill up all excavations to the level of the present surface without damage to the trees growing thereon and put said property in good condition, all at the expense of the county of Luzerne and subject to the approval of the proper municipal authorities."

It is the purpose of the county commissioners, defendants, to accept this proposition of the city of Wilkes-Barre, and to proceed at once to have new plans prepared for a courthouse to be erected on the plot described in this ordinance, to seek approval of the same in connection with said location, and if such approval be obtained, there to build a new courthouse, and level and abandon to the city the present site.

15. The site thus contemplated is underlaid with anthracite coal. It is not very distant from a coal breaker, and near gas works and a paper mill, and on two sides is enclosed by railway tracks, which, if the common were made even with the street (as is proposed to be done), would be from ten to twelve feet below that level,—which are not much used for travel,—and which may and are intended to be concealed by a retaining wall. The distance of the proposed site from the business center of the town is not so great as to cause inconvenience, but sufficient to insure immunity from many of the noises and other annoyances incident to the present location of the courthouse.

16. All the plaintiffs in this case are property holders and taxpayers of the county of Luzerne and the city of Wilkes-Barre, those coming in on May 28, 1901, being owners of real estate on North River street, fronting the river common between Market and Union streets, deriving title from certificates of the commissioners appointed to carry into effect the compensation act of 1799, said titles antedating Act of April 9, 1807, P. L. 195.

*     *     *     *     *     *     *     *

### CONCLUSIONS.

(*a*) The commissioners of Luzerne county, defendants, are not precluded by any proceeding, order or decree heretofore had or made, from choosing and accepting as a site for the new courthouse the plot or common referred to in the ordinance of November 23, 1900, or from taking such steps as in their judgment shall be proper and necessary to enable them to submit to the judges of the court of common pleas suitable plans for their consideration in connection with said site, under Act of April 19, 1895, P. L. 38.

(*b*) In the absence of any contrary final order under said act of 1895, and subject to approval by said judges in accordance therewith, said commissioners have authority to accept from the city of Wilkes-Barre the grant of the use of said site for the purpose of erecting and maintaining a courthouse thereon, and to abandon the site occupied by the present courthouse.

(*c*) The uses to which said common must be understood to be dedicated are all such uses beneficial to the public as may be designated by the legislature or by the municipality of Wilkes-Barre not conflicting with any legislative direction or authorized by express legislative sanction.

(*d*) The use to which the city of Wilkes-Barre undertook, in the ordinance of November 23, 1900, to devote said common is within the class of uses to serve which the control of the common was vested in the municipality, conflicts with no legislative direction concerning the use of any part of the common, and was, therefore, on the date of the passage of the ordinance, a lawful exercise of power on the part of the municipality ; and as regards its active or passive consent to such use in the future, the same is expressly sanctioned by Act of May 25, 1901, P. L. 301.

(*e*) The character of the dedication of the common and the nature of the use of it proposed in the ordinance of November 23, 1900, being as described (conclusions *c* and *d*), the plaintiffs have no standing, either as part of the public or as owners of property fronting the common, to object to its appropriation to or occupation for that purpose.

(*f*) No essential unfitness of the common for the use proposed to be made of it has been shown to presently exist or to be reasonably sure to result from any stipulations contained in the

ordinance of November 23, 1900, which would justify a decree prohibiting the commissioners from taking further steps towards the approval in connection with suitable plans, and the consequent acceptance of the proposed and the abandonment of the present site ; nor does the arrangement proposed by the city and intended to be accepted by the county appear to involve an improvident or wasteful bargain on either side.

(*g*) The bill should be dismissed with costs.

*Error assigned* was decree dismissing the bill.

*D. L. Rhone*, with him *P. H. Campbell*, *A. L. Williams* and *H. A. Fuller*, for appellants.

*Alexander Farnham*, with him *G. J. Clark*, for appellee.

PER CURIAM, April 21, 1902 :

It is certainly time that this prolonged litigation, which has resulted in so much strife and perhaps bitterness, should end. Every material fact necessary to a history of the case will be found in Bennett v. Norton, 171 Pa. 221, Mahon v. Norton, 175 Pa. 279, and Mahon v. Luzerne County, 197 Pa. 1. The latter case finally settled the question, as to the authority of the city of Wilkes-Barre to grant and the right of the county to accept in exchange for the old courthouse site, the present, determined on, location. It is not material to decide the exact nature of the estate acquired by the county in the new site ; it was an absolute right to use the land for court purposes. It acquired an undisturbed right of possession for a period of 999 years. As held by the learned judge of the court below, the " whole of the tract has been long since restored to the dominion of the city." The dominion of the city, as exercised over it by this exchange, is in accord with and not in conflict with any right of the public or individual property owner ; nor does it antagonize any sovereignty heretofore exercised, or claimed by the commonwealth.

As to the reservation by the city of the coal under the land, without deciding the legal effect of this reservation, we will not assume, that the commissioners acting for the public of the whole county, would deliberately erect a structure, costing

probably hundreds of thousands of dollars, leaving in a third party a right of property worth at most only a few thousand dollars, but yet which carried with it a right to tumble down the costly structure on the surface. Were we called upon to decide this question now, when it can scarcely be said to be involved in the issue before us, we would be inclined to hold, with the learned judge of the court below, that a proper interpretation of the intent of the grant did not release the grantor from the usual implied obligation of surface support.

But we will not discuss further the objections raised to the conclusions of the court below, except to say in answer to appellant's fifth assignment of error, that we are of opinion, the transaction was not a purchase of land by the county for courthouse purposes. The necessity to build being established by two grand juries, and their reports being approved by the court, the act of 1901 expressly conferred upon the commissioners authority to accept other public ground as a site for the new buildings. No previous consent of the grand jury to merely a change of location was necessary. In fact, it may be doubted whether the discretion of the commissioners, as to a change of location, could, even with legislative sanction, be usurped by the grand jury. But it is useless to decide this point, for neither the act of 1883 nor that of 1901, undertakes to interfere with the discretion vested in the commissioners by the act of 1834.

The decree of the court below is affirmed.